Filed 12/19/24  In re M.S. CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re M.S., a Person Coming Under the Juvenile Court Law. | |
| SAN BERNARDINO COUNTY CHILDREN AND FAMILY SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>J.B.,<br><br>Defendant and Appellant. | E084146<br><br>(Super.Ct.No. J297077)<br><br>OPINION |

APPEAL from the Superior Court of San Bernardino County.  Cara D. Hutson, Judge.  Affirmed.

Paul A. Swiller, under appointment by the Court of Appeal, for Defendant and Appellant.

Tom Bunton, County Counsel, and Landon Villavaso, Deputy County Counsel, for Plaintiff and Respondent.

1

## I. INTRODUCTION

Defendant and appellant J.B. (Father) appeals from an order terminating his parental rights with respect to M.S. pursuant to Welfare and Institutions Code[1] section 366.26. The sole claim raised in Father's appeal is that plaintiff and respondent San Bernardino County Children and Family Services (CFS) failed to fulfill its duty of inquiry under the Indian Child Welfare Act (ICWA; 25 U.S.C. § 1901 et seq.) as defined in section 224.2, subdivision (b) because it did not interview "all known and available relatives" regarding potential native American ancestry. We conclude the record does not show error warranting reversal on this ground.

## II. BACKGROUND

Father and S.B. (Mother)[2] are the parents of M.S.[3] In May 2023, CFS took M.S. into protective custody pursuant to a warrant. Shortly thereafter, the department filed a petition pursuant to section 300 on behalf of M.S., alleging that Mother and Father were unable to supervise, protect, provide, or care for M.S. as the result of domestic violence between Mother and Father; Mother's untreated mental health conditions; Mother's and Father's inability to provide safe and adequate provisions to care for M.S.; and Mother's unresolved dependency case involving M.S.'s half-siblings.

---

[1] Undesignated statutory references are to the Welfare and Institutions Code.

[2] Mother is not a party to this appeal.

[3] M.S. was initially incorrectly identified as M.B. in the record, and the trial court subsequently ordered that the record be corrected to accurately reflect the name on her birth certificate.

In May 2023, CFS filed a detention report. CFS reported that Mother denied having any Native American ancestry when questioned by a social worker. She reaffirmed this denial in a CFS Family Find and ICWA Inquiry form and also denied knowledge of facts that might suggest a reason to believe she had any Native American ancestry in a written ICWA-020 form. When initially asked by a social worker, Father asserted he had Native American ancestry associated with "the Cherokee tribe" but confirmed he did not have any tribal membership. However, a few days later, Father denied having any Native American ancestry in a CFS Family Find and ICWA Inquiry form and also denied knowledge of facts that might suggest a reason to believe M.S. had any Native American ancestry in a written ICWA-020 form.[4]

In July 2023, CFS filed a jurisdictional and dispositional report. Father reported to a social worker that his mother (paternal grandmother) believed there was some "Cherokee" ancestry "in their family." Father provided the social worker with paternal grandmother's maiden name and the family's general origins in the midwestern United States. At an initial jurisdictional and dispositional hearing, a maternal aunt appeared with Mother. As a result, the juvenile court inquired directly of maternal aunt whether she had reason to know if M.S. had any Native American ancestry. Maternal aunt initially expressed the belief that her family might have Native American ancestry. However, upon further questioning, maternal aunt stated she (1) had no information

---

[4] CFS also inquired of an alleged father who was incarcerated at the time. The alleged father denied any Native American ancestry in a CFS Family Find and ICWA Inquiry form as well as an ICWA-020 form. It was subsequently determined that the alleged father was not biologically related to M.S.

regarding any tribal affiliation, (2) she had no knowledge of how she might have Native American ancestry, (3) she did not know what family members may have information regarding Native American ancestry, and (4) she could not recall anyone in the family ever telling her she had Native American ancestry. The juvenile court sustained the jurisdictional allegations of the petition, formally removed M.S. from parental custody; denied reunification services to both parents pursuant to section 361.5, subdivision (b), and set the matter for a hearing pursuant to section 366.26.

In January 2024, CFS filed an "additional information" report outlining its efforts to further inquire regarding M.S.'s potential status as an Indian child. CFS interviewed paternal grandmother, who stated that her maternal grandparents had claimed to have Native American ancestry. Paternal grandmother provided the social worker with the names of these paternal great-great grandparents, as well as the names and birthdates of paternal great grandparents, all of whom were deceased. Based upon this information, CFS sent letters to the Bureau of Indian Affairs and the Cherokee Nation to inquire further regarding M.S.'s potential tribal affiliation but had yet to receive a response as of the date of the report.

The additional information report also detailed a follow up interview with Mother in which Mother stated she had once been told by her paternal grandmother that she had "Indian and German ancestry." However, Mother reported that this maternal great-great grandmother never specified any tribal affiliation and was now deceased. Mother provided the contact information for her paternal aunt (maternal great aunt) as a person who might have additional information. The social worker documented an attempt to

4

contact the paternal great aunt by telephone but stated she encountered only a message stating that the "call party is unavailable."

In March 2024, CFS filed a section 366.26 selection and implementation report. CFS reported that it had confirmed that its written correspondence to the Bureau of Indian Affairs, as well as the Cherokee Nation, had been received but noted that CFS had still not received any response. CFS also reported that it sent additional correspondence to the Bureau of Indian Affairs, Eastern Band of Cherokee Indians, the Cherokee Nation, and the United Keetoowah Band of Cherokee Indians to inquire about M.S.'s potential tribal affiliation. This updated correspondence specifically identified M.S.'s parents, maternal grandmother, maternal great-great grandparents, paternal grandparents, and paternal great-great grandparents to assist with any inquiry. At the section 366.26 hearing, the juvenile court terminated Mother's and Father's parental rights and selected a permanent plan of adoption. Father appeals from the order terminating his parental rights.

## III. DISCUSSION

In this appeal, the only claim of error is that the juvenile court and the department failed to fulfill their duty of inquiry under ICWA and section 224.2 by failing to interview identified relatives who were mentioned at various times in CFS reports. For the reasons set forth below, we conclude that Father has failed to show error and affirm the order terminating parental rights.

5

A. *General Legal Principles and Standard of Review*

"Congress enacted ICWA in 1978 to address concerns regarding the separation of Indian children from their tribes through adoption or foster care placement, usually in non-Indian homes. [Citation.] ICWA established minimum standards for state courts to follow before removing Indian children from their families and placing them in foster care or adoptive homes." (*In re D.S.* (2020) 46 Cal.App.5th 1041, 1048.)

Section 224.2 of the Welfare and Institutions Code "creates three distinct duties regarding ICWA in dependency proceedings. First, from the [Department's] initial contact with a minor and his family, the statute imposes a duty of inquiry to ask all involved persons whether the child may be an Indian child. [Citation.] Second, if that initial inquiry creates a 'reason to *believe*' the child is an Indian child, then the [Department] 'shall make *further inquiry* regarding the possible Indian status of the child, and shall make that inquiry as soon as practicable.' [Citation.] Third, if that further inquiry results in a reason to *know* the child is an Indian child, then the formal notice requirements of section 224.3 apply." (*In re D.S.*, *supra*, 46 Cal.App.5th at p. 1052; § 224.2)

Following the inquiry stages, the juvenile court may make a finding that ICWA does not apply because the department's inquiry and due diligence was " 'proper and adequate' but no 'reason to know' whether the child is an Indian child was discovered." (*In re D.S.*, *supra*, 46 Cal.App.5th at p. 1050.) "The finding implies that notice to a tribe was not required because social workers and the court did not know or have a reason to know the [dependent] children were Indian children and that social workers had fulfilled

6

their duty of inquiry." (*In re Austin J.* (2020) 47 Cal.App.5th 870, 885, overruled in part on other grounds by *In re Dezi C.* (2024) 16 Cal.5th 1112, 1152.) " ' "On a well-developed record, the [juvenile] court has relatively broad discretion to determine whether the agency's inquiry was proper, adequate, and duly diligent on the specific facts of the case." ' " (*In re Dezi C.*, at p. 1141.)

"[W]e review the juvenile court's ICWA findings under the substantial evidence test, which requires us to determine if reasonable, credible evidence of solid value supports the court's order." (*In re A.M.* (2020) 47 Cal.App.5th 303, 314, overruled on other grounds in *In re Dezi C.*, *supra*, 16 Cal.5th at p. 1152 fn. 18; *In re Austin J.*, *supra*, 47 Cal.App.5th at p.885 [implicit finding that social workers fulfilled their duty of inquiry and is reviewed for substantial evidence].)

B. *Father Has Failed to Show Error Warranting Reversal*

Here, Father's entire claim of error rests on the argument that the juvenile court's implied finding that social workers fulfilled their duty of inquiry under ICWA is not supported by substantial evidence. Specifically, Father argues that CFS failed to fulfill its duty of inquiry because the record discloses "numerous other relatives known to the social worker and referenced in reports" that were never specifically interviewed regarding M.S.'s potential Native American ancestry. We disagree that the failure to interview some family members is sufficient to show error in the context of this case.

Recently, our Supreme Court endorsed the view that "[i]f, upon review, a juvenile court's findings that an inquiry was adequate and proper and ICWA does not apply are found to be supported by sufficient evidence and record documentation as required by

California law . . . , there is no error and conditional reversal would not be warranted even if the agency did not inquiry of everyone who has an interest in the child." (*In re Dezi C.*, *supra*, 16 Cal.5th at p. 1141.) In doing so, our Supreme Court affirmed the view taken by numerous published decisions by the Court of Appeal that "complying with the literal language of [section 224.2, subdivision (b)]—that is, making an *initial* and *further* ICWA inquiry of every member of a child's extended family, . . . plus every other person who has an interest in the child—is absurd at best and impossible at worst." (*In re Ezequiel G.* (2022) 81 Cal.App.5th 984, 1006, overruled on other grounds by *Dezi, C.* at p. 1157; *In re K.H.* (2022) 84 Cal.App.5th 566, 603-604 [agreeing that a literal interpretation of section 224.2, subd. (b) "could arguably lend itself to an absurd interpretation"].)

Instead, the duty imposed by section 224.2 should be " 'slight and swift.' " (*In re Dezi C.*, *supra*, 16 Cal.5th at p. 1143 *citing In re S.S.* (2023) 90 Cal.App.5th 694, 698.) The juvenile court's finding that social workers fulfilled their duty of inquiry under section 224.2, turns on (1) whether social workers conducted an inquiry of extended family members whom they were already investigating as part of their usual course of work (*In re S.S.*, at pp. 704-705; *In re H.B.* (2023) 92 Cal.App.5th 711, 720); and (2) whether the record was sufficient to support a reasonable conclusion that the inquiry " 'has reliably answered the question at the heart of the ICWA inquiry: Whether a child involved in a proceeding "is or may be an Indian child" ' " (*In re H.B.*, at p. 720).

In our view, the record in this case was clearly more than cursory in nature. The record indicates that an initial inquiry was conducted of each family member who

appeared during court proceedings—including Mother, Father and a maternal aunt. The record also shows that CFS made attempts to contact the additional family members who were identified as potentially having relevant information regarding M.S.'s status as an Indian child—including paternal grandmother and maternal great aunt. Based upon the information provided by paternal grandmother, CFS then proceeded to inquire directly of the Bureau of Indian Affairs and at least three different tribal entities. None of these efforts disclosed any information to suggest a reason to know that M.S. was an Indian child.

Father argues that the inquiry in this case was inadequate because there were several family members briefly mentioned in various reports that were not interviewed. We are unpersuaded that a reasonable inquiry in this case would have required contacting these family members. With respect to maternal family members, a psychological assessment attached to one of the reports submitted by CFS briefly mentioned that Mother has one sister and one brother. However, Mother's sister was interviewed directly by the juvenile court at the jurisdictional and dispositional hearing,[5] and the record does not indicate that Mother ever provided the name or contact information for her brother. (*In re Q.M.* (2022) 79 Cal.App.5th 1068, 1082 ["[W]e cannot ask the agency to intuit the names of unidentified family members or to interview individuals for whom

_____

[5] Father suggests on appeal that there is "one additional maternal aunt," but this contention appears to be unsupported by the record. While several reports refer to Mother's sister generally, nothing in the record suggests that these references are to a different individual than the maternal aunt who appeared in court and was questioned by the juvenile court.

no contact information has been provided."].)  The only other maternal relative identified in the record was a maternal grand aunt, whom social workers attempted to contact, but did not receive a response. (2CT 8, *In K.M.* (2009) 172 Cal.App.4th 115, 119 [no further duty to inquire if a family member refuses to talk].)

With respect to paternal family members, Father argues that CFS failed to interview Father's sisters and Father's cousin.  However, the record does not suggest that any of these individuals would have been persons whom social workers contacted as part of their usual course of work.  More importantly, CFS successfully inquired of paternal grandmother—the actual family member through whom Father claimed M.S. might have native American lineage.  Having successfully inquired of paternal grandmother, there was no logical reason why a reasonable inquiry would have required conducting additional inquiries with Father's siblings or cousin.[6]

When the record shows that social workers conducted more than a mere cursory inquiry and such record is sufficient to support a reasonable conclusion that the inquiry has reliably answered the question of whether a dependent child is an Indian child, substantial evidence supports the trial court's finding that ICWA does not apply.  The fact that CFS did not interview every single family member identified in the record does

---

[6] In the normal course, the direct family member with alleged Native American ancestry would be presumed to have more accurate and complete information than family members who are not within the dependent child's direct lineage and are generationally removed from the purported tribal affiliation.  Absent any indication to the contrary, it is not unreasonable for social workers to pursue the best and most direct source of relevant information first and then, based upon the response, determine if further inquiry is needed from less reliable sources of information.

not, in itself, cast doubt on the conclusion reached by the juvenile court.  Because Father has failed to show error on this point, we need not address his additional arguments regarding prejudice.

## IV.  DISPOSITION

The order is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

FIELDS
J.

We concur:

McKINSTER
Acting P. J.


MILLER
J.